CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/24/2022

JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:19-cr-00002 |
| v. | MEMORANDUM OPINION |
| QUENTIN LOURON JONES, *Defendant.* | JUDGE NORMAN K. MOON |

Before the Court is Defendant's *pro se* 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release. The Court will deny the motion because Defendant's circumstances are not so extraordinary and compelling as to warrant a reduction in sentence.

## I

### Background

Defendant is serving 131 months' incarceration for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. *See* Dkt. 157 (judgment). He filed the instant motion for compassionate release a little over one year into his sentence. *See* Dkt. 183. The federal public defender was immediately appointed, *see* Dkt. 184, but declined to supplement Defendant's motion, *see* Dkt. 185. The matter is now ripe for decision.

The Bureau of Prison's website shows that Defendant is currently housed in FCI Williamsburg, and that his current release date is December 29, 2028.

### Defendant's Proffered Reasons for Early Release

Defendant argues that extraordinary and compelling reasons warranting early release from his term of imprisonment are presented by certain medical issues creating additional risk to him from the spread of COVID-19. Dkt. 183 p. 6. Defendant points specifically to his obesity, gout, and high blood pressure. *Id.*

## II

## Statutory Requirements

Defendant brings this motion under 18 U.S.C. § 3582(c)(1)(A).[1] Informally known as the compassionate release statute, this provision is understood to "introduce compassion as a factor

---

[1] The relevant portion of the statute reads as follows.

**(c) Modification of an Imposed Term of Imprisonment.**
**—**The court may not modify a term of imprisonment once it has been imposed except that—

**(1)** in any case—

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

**(i)** extraordinary and compelling reasons warrant such a reduction

[. . . .]

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

in assessing ongoing terms of imprisonment" by "authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

A defendant seeking early release vis-à-vis the compassionate release statute faces two threshold barriers. First, he must afford the Bureau of Prisons the opportunity to file a motion on his behalf. *See* § 3582(c)(1)(A) (allowing for a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").[2] Second, he must identify extraordinary and compelling reasons that warrant a sentence reduction. *See* § 3582(c)(1)(A)(i). *See also United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (explaining that the statute's requirement that any reduction be consistent with policy statements issued by the Sentencing Commission is inapplicable to a *defendant's* motion for compassionate release because the Sentencing Commission has, as of yet, only issued policy statements addressing motions filed by the Bureau of Prisons).

Only after both of these conditions are met is the district court then authorized to consider, in light of the factors set forth in 18 U.S.C. § 3553(a), whether to reduce the defendant's sentence. *See* § 3582(c)(1)(A). *See also High*, 997 F.3d at 186 (clarifying that the consideration of § 3553(a) factors comes into play once a successful showing of extraordinary and compelling circumstances has been made). *See also United States v. Graham*, No. 21-6613,

---

[2] The Fourth Circuit recently held that this exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2022).

2022 WL 1172169 *1 (4th Cir. 2022) (relating three step process). Here, the Court may begin and end its analysis with the second condition.

There are as of yet no firm standards to aid district courts in distinguishing extraordinary and compelling circumstances from the ordinary disadvantages of incarceration which our criminal justice system is obliged to tolerate. Instead, the compassionate release statute is understood to empower courts "to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). The statute itself provides no guideposts. *See High*, 997 F.3d at 186 (acknowledging that extraordinary and compelling reasons "are not statutorily detailed"). And the Fourth Circuit appears disinclined to bound the statute's broad language with bright-line rules. *See Hargrove*, 30 F.4th at 197 (rejecting a bright-line rule and stating that "[t]he factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized"); *id* at 198 (declining to adopt separate bright-line rule and instead concluding "that the inquiry is multifaceted and must take into account the totality of the relevant circumstances").

However, at least in the case of compassionate release motions based on circumstances of medical peril, the meaning of extraordinary and compelling reasons "may not be totally without definition." *High*, 997 F.3d at 186. First, it is clear that serious medical risk to an inmate can be a basis for early release. *Id*. at 185. Second, it now appears established that, with respect to the unique medical risks created by the COVID-19 pandemic, a defendant must show both that (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected. *Id*. Within these outer bounds, however, the Fourth Circuit has not

– 4 –

undertaken "to elucidate the shape of qualifying medical conditions;" instead committing the resolution of such questions to the discretion of the district courts. *Id*.

The Fourth Circuit did allow, however, that the Sentencing Commission's policy statement at U.S. Sentencing Guideline ("U.S.S.G.") § 1B1.13 can serve as "helpful guidance." *Id*. at 186 (quoting *McCoy*, 981 F.3d at 282 n.7). *See also Hargrove*, 30 F.4th at 197. In the case of motions for compassionate release filed by the Bureau of Prisons, as opposed to motions filed by defendants, U.S.S.G. § 1B1.13 expounds "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (internal quotation marks omitted). For motions based on an inmate's medical condition, the policy statement articulates a high threshold—i.e., "[t]he defendant is suffering from a terminal illness," *id*. at application note (1)(A)(i), or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *id*. at application note (1)(A)(ii).

The Court is left with the following understanding. Forsaking resort to any bright-line rules, yet treating as informative the high-threshold articulated in U.S.S.G. § 1B1.13, the Court is to draw a conclusion from the totality of relevant circumstances presented by each individual case whether a defendant has identified extraordinary and compelling reasons warranting release. But an inmate seeking early release based on the medical risks associated with contracting COVID-19 must at minimum demonstrate both that (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected.

**Defendant is Not Eligible for Early Release**

Following this course, the Court concludes that the circumstances presented by this case are not so extraordinary and compelling as to warrant early release. First, Defendant has not provided any reason to believe that his risk of contracting the virus would be lessened were he to enter the general population. The Bureau of Prisons website reflects that there are only three active cases of COVID-19 at FCI Williamsburg, which houses 1,498 total inmates.[3] It also provides access to the Bureau's plan to mitigate against the dangers posed by the virus, which courts have recognized to be "a comprehensive, evolving and professional effort to curtail the virus and protect both inmates and staff." *United States v. Feiling*, 453 F.Supp.3d 832, 841 (E.D. Va. 2020). Nor is there anything before the Court to suggest that FCI Williamsburg has failed in any way to take preventative measures to stop the spread of COVID-19 in its facility.[4] *See United States v. Tatum*, No. 3:19-cr-00146, 2022 WL 287695 *2 (E.D. Va. Jan. 31, 2022) (Novak, J.) ("A general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release.").

Second, while Defendant's obesity is recognized by the CDC as an underlying medical condition associated with "higher risk for" severe COVID-19,[5] the Court is unable to find that

---

[3] *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS (last visited June 23, 2022), https://www.bop.gov/coronavirus/.

[4] Defendant points to "poor management of the facility" as a compounding risk factor. But he does not identify any particular failing by FCI Williamsburg, so that the Court must pass over this argument.

[5] Defendant's medical records show a BMI of 40.1 kg/m on April 14, 2021. *See* Dkt. 183 p. 14. The CDC lists a BMI ≥ 30 kg/m as a medical condition creating a "higher risk for sever COVID-19 outcomes." *See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html* (last visited June 23, 2022).

The CDC has found only that high blood pressure may "possibly" render a person more

– 6 –

this heightened risk, without more, is a circumstance so extraordinary and compelling as to warrant release from FCI Williamsburg at this time. Defendant has not provided any reason to think that FCI Williamsburg is unable to care for an inmate with obesity who contracts COVID-19. To the contrary, the record reflects that Defendant was offered (and refused) the COVID-19 vaccine. *See* Dkt. 183 p. 16. *Cf. United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). *See also United States v. Centeno-Morales*, No. 7:13-cr-00074, 2022 WL 1547755 *3 (W.D. Va. May 16, 2022) (Dillon, J.) (noting that "[m]any courts have held that an inmate's decision not to accept the COVID-19 vaccine, while not controlling, weighs against granting a motion for compassionate release that is based on COVID-19 concerns").

### III

"COVID-19 raises medical issues in the prison context that are particularly serious," and "depending on the circumstances, an inmate might well be able to present an extraordinary and compelling reason for release based on COVID-19." *High*, 997 F.3d at 185. But the Court finds that *this* defendant's circumstances are not so extraordinary and compelling as to outweigh "society's interests in the defendant's continued incarceration and the finality of judgments." *Hargrove*, 30 F.4th at 197. Because early release is therefore not authorized, Defendant's motion will be dismissed.

---

susceptible to becoming very sick from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 23, 2022). The CDC does not list gout among the conditions associated with risk of complications arising from a COVID-19 infection.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this ‗24th‗ day of June 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE